. **Adolph Nix, Plaintiff in Error, v. Brunswick-Balke-Collender Company, Defendant in Error.**

### Gen. No. 19,592.    (Not to be reported in full.)

Error to the Superior Court of Cook county; the Hon. MARCUS A. KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and remanded. Opinion filed February 24, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

### Statement of the Case.

Action by Adolph Nix against Brunswick-Balke-Collender Company, a corporation, to recover for personal injuries. The substantive facts are stated in *Brunswick-Balke-Collender Co. v. Nix*, 138 Ill. App. 559, on a former appeal. From a judgment upon a verdict in favor of defendant, plaintiff brings error.

The plaintiff, a boy of seventeen years of age, was employed by the defendant on a lathe which for temporary purposes was fitted up for boring small holes in the side of stoppers to be fastened to wires and used in keeping the counts in billiards. There were thirty-three counters made to every one stopper. The holes bored in the side of the stopper were for the purpose of inserting a screw by which the stopper was made rigid on the wire. The lathe was ordinarily used for another purpose, and was prepared for the purpose of boring these holes by the insertion of a wooden plug into the spindle on the lathe. The spindle was made of metal with an opening at the outside and which was five-eighths inches in diameter and tapered down towards the end that went into the lathe head. The inside of the spindle was smooth, not threaded, and the plug was not threaded. The plug was held in the spindle only by being firmly driven into the end of the spindle, The plug contained a gimlet or bit which bored the holes. Fitted out in this way, the lathe was operated by steam, connected by belts and pulleys to a power shaft which caused the bit or gimlet to be revolved at the rate of 3,300 to 4,000 revolutions per minute. The machine had no regular attachment to place on it for use in boring holes. It was in reality an automatic woodcutting machine, and was used only occasionally for the use to which it was devoted when the plug flew out of the spindle and destroyed one of plaintiff's eyes.

The evidence of the plaintiff tended to show that the plug, when fastened into the spindle the last time be-

Nix v. Brunswick-Balke-Collender Co., 191 Ill. App. 503.

fore the accident, extended into the spindle a distance of only one-half to five-eighths of an inch. The defendant's evidence tended to show that the plug extended into the spindle anywhere from one to two and one-half inches.

Plaintiff had used the machine about four times before he was hurt, or only about fifteen hours covering a period of about three weeks. He never set the plug into the spindle himself. The plug had to be set exactly true and was set by Schwartz, a skilled wood turner. The defendant's foreman told Schwartz to set the plug for plaintiff and he did so on each occasion. The plug was set by driving it in tight to secure it, hammering the sides and turning the belt until it was exactly true. On August 10, 1901, the plug and bit which it contained flew out of the end of the shaft in which it was held, striking the plaintiff in the eye. He at that time was not engaged in boring a piece of wood, but was reaching for a piece to be bored when the wooden plug with the bit flew out of its socket. On August 9th, the day before the accident, plaintiff went to Schwartz, as directed by the general foreman, and told him that he had some boring to do and requested him to place the plug in the spindle. Schwartz put it in and the plug came out after being used a while and fell upon the floor. Plaintiff went to Schwartz and told him that the plug had come out and Schwartz put it in again, saying, "It is all right. It won't come out again," and thereupon plaintiff resumed the use of the machine, and was shortly thereafter injured. Schwartz was a skilled wood turner, and testified that he drove the plug into the hole in the lathe in such a manner that the bit would run perfectly true and that it required skill to do it.

B. J. WELLMAN and RICHARD J. FINN, for plaintiff in error; GEORGE H. FOSTER, of counsel.

P. L. McARDLE and F. J. CANTY, for defendant in error; J. C. M. CLOW, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

### Abstract of the Decision.

1. APPEAL AND ERROR, § 1526*—*immateriality of erroneous instructions where verdict proper.* If, in an action for personal injuries, a verdict of not guilty is sustained by the evidence, errors in instructions upon plaintiff's appeal become immaterial, since he has no right of action upon the evidence or the law applicable thereto.

2. INSTRUCTIONS, § 10*—*where unnecessarily numerous.* The practice of tendering numerous instructions, where only a few are needed to properly submit the issues to the jury, is to be condemned as tending to mislead the jury and to bring error into the record, apart from placing an unnecessary burden upon trial and reviewing courts.

3. MASTER AND SERVANT, § 690*—*when master liable for defective machine.* Where it appeared that plaintiff, who was seventeen years of age was working at a machine under the direction of defendant's foreman and he was struck in the eye by a plug and bit flying out of a shaft, after it had been secured by a skilled workman delegated by defendant to set it aright, and after he had been assured by him that it was in proper condition, *held* that a verdict in favor of defendant was against the weight of the evidence.

4. MASTER AND SERVANT, § 363*—*necessity of obvious danger for assumption of risk.* In an action for loss of an eye through being struck by a plug and bit flying off of a spindle upon which plaintiff was at work, where it did not appear that he knew the plug might become loose and fall out of the spindle, and he was ordered to do the work by the foreman and a skilled workman, delegated by defendant to insert and adjust the plug, who assured him that the plug was in proper condition for use, and it did not appear that plaintiff, a boy seventeen years of age, with little experience in the particular kind of work, knew that the flying out of the plug was an ordinary risk and danger incident to the work, or that he was competent to comprehend and appreciate the risks and dangers, an instruction that plaintiff could not recover if the injury was the result of a danger which he appreciated or which he should have appreciated, *held* erroneous, the risk and danger of employment being not open and obvious under the proof.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

5. MASTER AND SERVANT, § 782*—*necessity of basing instruction as to assumed risk on the evidence.* In an action for personal injuries sustained by reason of being struck in the eye by a plug and bit flying out of a spindle at which plaintiff was employed, an instruction ignoring an order to do the work and the assurance of defendant's properly delegated skilled workman that it was in proper condition, and assuming that there was evidence tending to show that the plaintiff appreciated and understood the danger of the plug's flying out in the operation of the machine, and that such danger was open and obvious to the plaintiff, *held* erroneous.

6. MASTER AND SERVANT, § 782*—*instructions as to assumed risk.* In an action against a master for injuries to an eye struck with a plug flying from a spindle at which plaintiff worked, an instruction to the jury that if they found from the evidence that a lathe and plug had been in use by the plaintiff from the time he was first employed by the defendant, and that whatever danger was involved in the use of the same was obvious and patent to the observation of any person of ordinary intelligence, age and experience of plaintiff, and that the condition of the lathe and plug remained the same during the entire time of the service of the plaintiff in and about the same, and if the jury further found from the evidence that the plaintiff was a person of ordinary intelligence for one of his age and capable of understanding and appreciating the conditions and dangers involved in the use of the lathe and plug, then they were instructed that the plaintiff assumed the risk involved in the use of the same and could not recover, *held* erroneous, since plaintiff, under the evidence, only worked at the lathe, not to exceed fifteen hours in all, on four different occasions in the course of one year's employment, and since it did not take into consideration the order to do the work and the assurance of defendant's properly delegated agent that the machine had been put in good working condition.

7. MASTER AND SERVANT, § 782*—*where instructions improper as to assumed risk.* In an action for personal injuries, an instruction to the jury that if they believed from the evidence that the plaintiff, by giving ordinary care and attention to things about him and to the mechanism and operation of the machine, should have known and understood that there was a possibility that a bit in question might become loose in the socket of the spindle and fly out of that socket while the spindle was in motion, then the plaintiff assumed the risk and the jury should find the defendant not guilty, *held* objectionable and misleading for want of evidence on which to base it, and in that it stated the plaintiff assumed the risk on the mere possibility that the bit and plug in question might fly out of the socket, no account being given to the effect of the specific order to do

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the work and the assurance of a skilled and properly authorized employee that the plug and bit were in proper condition after being set.

8. MASTER AND SERVANT, § 698*—*evidence insufficient to show assumption of risk.* In an action for injuries received from the flying off of a plug in the operation of a machine, where there was no evidence that the employee knew or should have known that the plug might fly out and injure him, although he had seen it drop out on the floor when it was replaced by one properly authorized with the assurance of one qualified to know that it was all right and would not come out again, *held* there was no basis in the evidence for the jury to find that the danger of the plug's flying out was so obvious and patent that a seventeen-year-old boy could know and appreciate the danger to which he was exposed or to justify the giving of instructions on the question of assumed risk.

9. MASTER AND SERVANT, § 777*—*when instruction misleading as not based on evidence.* Where there was no evidence furnishing a basis for a "simple accident" theory embodied in a peremptory instruction, *held* that such instruction was misleading in its effect upon the jury.